**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CENTRO PRESENTE, a membership organization, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:18-cv-10340 |
| DONALD J. TRUMP, President of the United States, in his official capacity, et al., | ) ) ) | |
| Defendants. | ) | |

_____

**<u>REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

    I.  Congress Expressly Excluded Judicial Review of TPS Determinations. ......................... 2

    II.  Plaintiffs Have Neither Pleaded a Plausible Equal Protection Violation nor
Identified the Appropriate Standard of Review for Any Such Claim.............................. 4

        A.  Country-Based Determinations Do Not Implicate Equal Protection...................... 4

        B.  Plaintiffs Have Not Set Forth "Clear Evidence" of "Outrageous"
Discrimination........................................................................................................ 5

        C.  The TPS Decisions Were Rational, and That Is All the Due Process
Clause Requires. .................................................................................................... 8

    III.  The Secretaries' Decisionmaking Process, as Reflected by the *Federal Register*
Notices, Was Consistent with the Statutory Framework and with Past Practice........... 10

    IV.  This Court Lacks Jurisdiction to Enter Equitable Relief Against President
Trump........................................................................................................................... 15

CONCLUSION............................................................................................................................. 15

## TABLE OF AUTHORITIES

**CASES**

*Achacoso-Sanchez v. INS*,
  779 F.2d 1260 (7th Cir. 1985) ................................................................. 4

*Aguilar v. ICE*,
  510 F.3d 1 (1st Cir. 2007)........................................................................ 3

*Armour v. City of Indianapolis*,
  566 U.S. 673 (2012) ............................................................................. 10

*Batalla Vidal v. Nielsen*,
  291 F. Supp. 3d 260 (E.D.N.Y. 2018) ..................................................... 6

*Boumediene v. Bush*,
  553 U.S. 723 (2008) ............................................................................... 3

*Bruns v. Mayhew*,
  750 F.3d 61 (1st Cir. 2014)...................................................................... 9

*Chehazeh v. Att'y Gen. of U.S.*,
  666 F.3d 118 (3d Cir. 2012) .................................................................... 3

*Cho v. Gonzales*,
  404 F.3d 96 (1st Cir. 2005)..................................................................... 11

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985) ................................................................................ 5

*Elgin v. Dep't of Treasury*,
  567 U.S. 1 (2012) .................................................................................... 3

*FCC v. Beach Commc'ns, Inc.*,
  508 U.S. 307 (1993) .............................................................................. 10

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) .............................................................................. 15

*Hadayat v. Gonzales*,
  458 F.3d 659 (7th Cir. 2006) ................................................................... 7

*Jafarzadeh v. Duke*,
  270 F. Supp. 3d 296 (D.D.C. 2017)........................................................ 11

*Jennings v. Rodriguez*,
   138 S. Ct. 830 (2018)...........................................................................................................2

*Kandamar v. Gonzales*,
   464 F.3d 65 (1st Cir. 2006)............................................................................................6, 7

*Keene Corp. v. United States*,
   508 U.S. 200 (1993) ...........................................................................................................4

*Kleindienst v. Mandel*,
   408 U.S. 753 (1972) ...........................................................................................................6

*Knight First Amendment Institute v. Trump*,
   No. 17 Civ. 5205 (NRB), 2018 WL 2327290 (S.D.N.Y. May 23, 2018)..................................15

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) .........................................................................................................13

*Malik v. Gonzales*,
   213 F. App'x 173 (4th Cir. 2007)........................................................................................7

*McMeans v. Obama*,
   No. 11-891-RGA, 2011 WL 6046634 (D. Del. Dec. 1, 2011) ..................................................15

*McNary v. Haitian Refugee Ctr., Inc.*,
   498 U.S. 479 (1991) .....................................................................................................3, 11

*Miguel-Miguel v. Gonzales*,
   500 F.3d 941 (9th Cir. 2007) ...........................................................................................14

*Miller v. French*,
   530 U.S. 327 (2000) ...........................................................................................................2

*Mississippi v. Johnson*,
   71 U.S. (4 Wall) 475 (1866) .............................................................................................15

*New Hampshire Hospital Ass'n v. Azar*,
   887 F.3d 62 (1st Cir. 2018)..............................................................................................14

*Newdow v. Roberts*,
   603 F.3d 1002 (D.C. Cir. 2010).........................................................................................15

*NLRB v. Bell Aerospace Co.*,
   416 U.S. 267 (1974) .........................................................................................................14

*NLRB v. Lily Transportation Corp.*,
   853 F.3d 31 (1st Cir. 2017)................................................................................ 14

*Patchak v. Zinke*,
   138 S. Ct. 897 (2018)......................................................................................... 4

*Perez v. Mortgage Bankers Ass'n*,
   135 S. Ct. 1199 (2015)....................................................................................... 14

*Plyler v. Doe*,
   457 U.S. 202 (1982) ........................................................................................... 5

*Rajah v. Mukasey*,
   544 F.3d 427 (2d Cir. 2008) .............................................................................. 7

*Regents of the Univ. of Cal. v. DHS*,
   298 F. Supp. 3d 1304 (N.D. Cal. 2018)............................................................. 6

*Reno v. Am.-Arab Anti-Discrim. Comm. ("AADC")*,
   525 U.S. 471 (1999) ........................................................................................... 6

*Rivas v. U.S. Att'y Gen.*,
   765 F.3d 1324 (11th Cir. 2014) ......................................................................... 9

*Trump v. Hawaii*,
   585 U.S. __, No. 17-965, slip op. (U.S. June 26, 2018) ................................... *passim*

*Vill. of Arlington Heights v. Metro. Hous. Auth.*,
   429 U.S. 252 (1977) ........................................................................................... 6

*Webster v. Doe*,
   486 U.S. 592 (1988) ........................................................................................... 2

*Willis v. HHS*,
   38 F. Supp. 3d 1274 (W.D. Okla. 2014)............................................................ 15

*Zadvydas v. Davis*,
   533 U.S. 678 (2001) ........................................................................................... 3

## STATUTES

5 U.S.C. § 551................................................................................................... 14

5 U.S.C. § 701................................................................................................... 10, 11

8 U.S.C. § 1231................................................................................................. 3

8 U.S.C. § 1252 .................................................................................................... 3, 11

8 U.S.C. 1254a .................................................................................................... *passim*

## ADMINISTRATIVE AND EXECUTIVE MATERIALS

*Termination of Designation of Kuwait Under Temporary Protected Status Program*,
    57 Fed. Reg. 2930-03 (Jan. 24, 1992) ................................................................. 12

*Termination of the Province of Kosovo in the Republic of Serbia in the State of the*
    *Federal Republic of Yugoslavia (Serbia-Montenegro) Under the Temporary*
    *Protected Status Program*,
    65 Fed. Reg. 33,356-01 (May 23, 2000) .............................................................. 13

*Termination of Designation of Angola Under the Temporary Protected Status Program*,
    68 Fed. Reg. 3896-01 (Jan. 27, 2003) ................................................................. 13

*Termination of the Designation of Montserrat Under the Temporary Protected Status Program;*
    *Extension of Employment Authorization Documentation*,
    69 Fed. Reg. 40,642-01 (July 6, 2004) ................................................................ 13

*Extension of the Designation of Haiti for Temporary Protected Status*,
    80 Fed. Reg. 51,582-01 (Aug. 25, 2015) ............................................................ 13

*Extension of the Designation of Honduras for Temporary Protected Status*,
    81 Fed. Reg. 30,331-02 (May 16, 2016) .............................................................. 13

*Extension of the Designation of El Salvador for Temporary Protected Status*,
    81 Fed. Reg. 44,645-03 (July 8, 2016) ................................................................ 13

*Extension of the Designation of Haiti for Temporary Protected Status*,
    82 Fed. Reg. 23,830-01 (May 24, 2017) .............................................................. 8

*Extension of South Sudan for Temporary Protected Status*,
    82 Fed. Reg. 44,205-01 (Sept. 21, 2017) ............................................................ 8

*Extension of the Designation of Honduras for Temporary* Protected Status,
    82 Fed. Reg. 59,630-02 (Dec. 15, 2017) ............................................................. 8

*Termination of the Designation of Haiti for Temporary Protected Status*,
    83 Fed. Reg. 2648-01 (Jan. 18, 2018) ................................................................. 10

*Termination of the Designation of El Salvador for Temporary Protected Status*,
    83 Fed. Reg. 2654-01 (Jan. 18, 2018) ................................................................. 10

*Extension of the Designation of Syria for Temporary Protected Status*,
    83 Fed. Reg. 9329-02 (Mar. 5, 2018) ........................................................................... 8

*Termination of the Designation of Honduras for Temporary Protected Status*,
    83 Fed. Reg. 26,074-01 (June 5, 2018) ............................................................... 10, 12

## OTHER AUTHORITIES

H.R. Rep. No. 101-245 (1989)........................................................................................ 2

**INTRODUCTION**

The issues before this Court are straightforward.  First, the question whether this Court has jurisdiction to review the decisions by former Acting Secretary of Homeland Security Elaine Duke and Secretary of Homeland Security Kirstjen Nielsen to terminate Temporary Protected Status ("TPS") for Haiti, El Salvador, and Honduras is answered by express language in the Immigration and Nationality Act ("INA") precluding review of any TPS determination—whether to designate a country for TPS, to extend a designation, or to terminate a designation.  This Court accordingly lacks jurisdiction over Plaintiffs' claims.  Second, even if judicial review were available, Plaintiffs have not plausibly alleged an actionable equal protection violation.  Both the designation of TPS for a country undergoing emergent challenges and the eventual and inevitable termination of that designation require unique decisions (depending on the basis for designation under 8 U.S.C. § 1254a(b)(1)) about such questions as whether there continues to be an ongoing armed conflict in the country; whether there continue to be substantial, but temporary, disruptions in living conditions in the affected area(s); whether the country is able to handle adequately the return of its nationals and/or whether the country's nationals may return in safety; and whether it is contrary to the national interest to allow the country's nationals to remain in the United States.  Such unique, country-based decisions not only are not amenable to judicial second-guessing but also do not give rise to an equal protection claim.  And even if an adequate showing of animus could ever support an equal protection claim in this context, Plaintiffs cannot show pursuant to applicable principles of law that there is "clear evidence" that the Secretaries acted with "outrageous" discrimination. Third, Plaintiffs have not plausibly alleged under the Administrative Procedure Act ("APA") that the Secretaries' exercise of judgment in assessing current country conditions amounts to a "new rule."  Finally, Plaintiffs have neither demonstrated that this Court has jurisdiction to enjoin the

President in the performance of his official duties nor shown why relief against the agency decisionmaker could not make them whole.  For all these reasons, this case must be dismissed.[1]

## ARGUMENT

### I.      Congress Expressly Excluded Judicial Review of TPS Determinations.

Plaintiffs open their brief with a discussion of legislative history relating to a TPS predecessor bill that died in Congress.  *See* Pls.' Opp'n to Defs.' Mot. to Dismiss First Am. Compl. ("Pls.' Opp'n") at 3-5, ECF No. 35.  However, Plaintiffs fail to acknowledge another piece of legislative history:  a report stating that "none of the [Secretary's] decisions with regard to granting, extending, or terminating TPS will be subject to judicial review."  H.R. Rep. No. 101-245, at 14 (1989).  Consistent with that intent, Congress provided that there is "*no judicial review* of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS.  8 U.S.C. § 1254a(b)(5)(A) (emphasis added).  Thus, the heightened showing required by *Webster v. Doe*, 486 U.S. 592 (1988), is satisfied here:  Congress's intent to "preclude judicial review of constitutional claims" (and all other claims) is "clear."  *Id.* at 603 (citation omitted). While Plaintiffs suggest that such preclusion would itself present a constitutional problem and further surmise that courts "will read limitations into statutes in order to avoid constitutional infirmities," Pls.' Opp'n at 8, that assertion is inconsistent with the Court's admonition just this Term in *Jennings v. Rodriguez* that "[s]potting a constitutional issue does not give a court the authority to rewrite a statute as it pleases.  Instead, the canon [of constitutional avoidance] permits a court to 'choos[e] between competing *plausible* interpretations of a statutory text.'"  138 S. Ct. 830, 843 (2018) (citation omitted); *see also Miller v. French*, 530 U.S. 327, 341 (2000) (courts must not "press statutory construction 'to the point of disingenuous evasion' even to avoid a constitutional question" (citation omitted)).  Here, as in *Jennings*, there is no other plausible construction of the statute, and therefore "the canon simply has no application."  138 S.

---

[1] The district court in *Ramos v. Nielsen*, No. 3:18-cv-01554-EMC (N.D. Cal. filed Mar. 12, 2018), concluded differently in its June 25, 2018, Order, ECF No. 34.  The Government respectfully disagrees with that decision.

Ct. at 842 (citations and internal quotation marks omitted).  While Plaintiffs rely on *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001), where the Court found no "clear indication of congressional intent" in 8 U.S.C. § 1231(a)(6) to empower the Attorney General to indefinitely detain an alien ordered removed,[2] here the *only* plausible interpretation of 8 U.S.C. § 1254a(b)(5)(A) is that it forbids judicial review of "any" TPS determination by the Secretary.[3]

Plaintiffs worry that "in these circumstances, there is no meaningful alternative avenue for review," given the limitations inherent in removal proceedings.  Pls.' Opp'n at 10.  Yet in other contexts, the Supreme Court has approved Congress's effort to channel constitutional (and other) claims into limited fora.  *E.g.*, *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012) (rejecting plaintiff's reliance on *Webster* where statute channeled claims, including constitutional claims, arising from adverse employment actions to the Merit Systems Protection Board and the Federal Circuit).[4] Congress created TPS inclusive of its limitations on judicial review, and Congress can modify the statute as it deems appropriate.  But this Court cannot disregard the clear constraints that Congress

---

[2] Plaintiffs also rely on *Boumediene v. Bush*, 553 U.S. 723 (2008), *see* Pls.' Opp'n at 9, but that case is irrelevant, as it addressed the distinct constitutional problem of a statute that purports to strip federal courts of habeas jurisdiction where the writ has not been formally suspended.

[3] Plaintiffs cite 8 U.S.C. § 1252(b)(9), a separate section of the INA that references constitutional provisions.  *See* Pls.' Opp'n at 9.  Plaintiffs suggest that if Congress meant to include constitutional claims within the ambit of § 1254a(b)(5)(A), it would have done so explicitly.  But § 1254a(b)(5)(A) does not purport to apply to some subset of claims: by its terms, it reaches *all claims* challenging TPS determinations.  It should come as no surprise that different provisions of the INA, enacted by different Congresses, may use different language to convey similar intent.

[4] None of Plaintiffs' inapposite authorities would permit this Court to disregard the plain language of § 1254a(b)(5)(A) simply because alternative fora for judicial review may not be available for all potential plaintiffs.  None of these cases support the view that the TPS statute leaves any room for a court to second-guess a TPS determination, which is what Plaintiffs ultimately seek regardless of how they frame their challenge.  *E.g.*, *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991) (statute that channeled review of denials of special agricultural worker status did not bar collateral challenge to application-processing procedures); *Chehazeh v. Att'y Gen. of U.S.*, 666 F.3d 118, 133 (3d Cir. 2012) (statute that channeled review of removal actions did not preclude review of claim by plaintiff not subject to order of removal); *Aguilar v. ICE*, 510 F.3d 1, 21 (1st Cir. 2007) (statute that generally foreclosed review of discretionary decisions by Attorney General did not apply to challenge to detention/transfer of aliens not explicitly vested in Attorney General's discretion).

built into the statutory framework, even if the Court is sympathetic to Plaintiffs' concerns. *See Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) ("Congress has the constitutional authority to define the jurisdiction of the lower federal courts." (citation omitted)); *Patchak v. Zinke*, 138 S. Ct. 897, 907 (2018) (plurality opinion) ("Congress generally does not infringe the judicial power when it strips jurisdiction because, with limited exceptions, a congressional grant of jurisdiction is a *prerequisite* to the exercise of judicial power.").  This principle applies with particular force here because "over no conceivable subject is the legislative power of Congress more complete than with respect to immigration." *Achacoso-Sanchez v. INS*, 779 F.2d 1260, 1265 (7th Cir. 1985) (citation omitted).

## II.     **Plaintiffs Have Neither Pleaded a Plausible Equal Protection Violation nor Identified the Appropriate Standard of Review for Any Such Claim.**

### A.   Country-Based Determinations Do Not Implicate Equal Protection.

The Fifth Amendment states that no *person* shall be "deprived of life, liberty, or property, without due process of law."  The equal protection component of the Due Process Clause thus extends to classifications between persons or groups of persons, and heightened scrutiny applies only when those classifications are based on suspect or quasi-suspect characteristics.  Here, Plaintiffs have not challenged a classification between persons or groups of persons.  Rather, the TPS statute authorizes the Secretary to determine, *e.g.*, whether a *country* is experiencing an ongoing armed conflict; whether a *country* is unable, temporarily, to handle adequately the return of its nationals; or whether the nationals of a *country* are unable, temporarily, to return home in safety.  *See* 8 U.S.C. § 1254a(b)(1).  Each TPS decision is fact-bound, and the Secretary's choice to designate or redesignate a country for TPS or to extend or terminate an existing TPS designation for any given country has no bearing on the decision for any other country or on the rights of other persons—including nationals of the subject country with other lawful immigration status.

Because Plaintiffs cannot show that the challenged TPS decisions were tantamount to treating a group of *persons* differently because of their race or national origin, Plaintiffs' equal protection theory is a poor fit for the facts of this case.  While other provisions of law may place

different limits on the government's authority to regulate and classify, equal protection "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). If Plaintiffs wish to challenge a country-based determination on equal protection grounds, they should be required at minimum to show that the determination has the practical effect of treating them differently from other similarly situated persons.   That is, Plaintiffs must identify a population that is similarly situated to them in all material respects save for their protected characteristic and that has been differently or more favorably treated.   Plaintiffs cannot carry that burden.   Apart from their race or national origin, the individual Plaintiffs (and the organizational Plaintiffs' constituents) are *dis*similarly situated from other persons:  they are lawfully present in the United States, absent other independent bases, only because of their home countries' prior TPS designations.   They are not being singled out or treated differently for racial or any other reasons; they are simply no longer able to take advantage of a temporary status formerly conferred on their home countries.   Plaintiffs' equal protection claim thus fails at the outset.

B.   Plaintiffs Have Not Set Forth "Clear Evidence" of "Outrageous" Discrimination.

Even if the Court were to find that the Secretaries' country-based TPS decisions constituted a classification between groups of persons so as to trigger equal protection, Plaintiffs cannot show that this classification was unconstitutional.  The Supreme Court's decision in *Trump v. Hawaii*, decided on the very day of this filing, makes clear that at most rational basis would be the applicable standard of review given the deference provided to the political branches in this area. *See Trump v. Hawaii*, 585 U.S. __, No. 17-965, slip op. at 30 (U.S. June 26, 2018) ("Because decisions [in the admission and exclusion of foreign nationals] may implicate 'relations with foreign powers,' or involve 'classifications defined in the light of changing political and economic circumstances,' such judgments 'are frequently of a character more appropriate to either the Legislature or the Executive.'" (citation omitted)); *see also generally id.* at 33-38 (rejecting constitutional challenge after applying rational basis).  The Supreme Court further noted in *Hawaii* that the degree of scrutiny depends on the context and how much deference, statutorily and

constitutionally, is owed to the Executive in a certain area, *see Hawaii*, slip op. at 12-13.  There can be no doubt that substantial deference would apply to TPS determinations, to the extent judicial review is even available, given the categorical preclusion of judicial review provided by the statute. Accordingly, Plaintiffs' reliance on the multifactor balancing test of *Village of Arlington Heights v. Metropolitan Housing Authority*, 429 U.S. 252 (1977), is surely misplaced in light of today's Supreme Court holding.

As Defendants argued in their opening brief, in order for Plaintiffs to go forward with this claim, they must allege facts amounting to "clear evidence" of "outrageous" discrimination, *Reno v. Am.-Arab Anti-Discrim. Comm.* ("*AADC*"), 525 U.S. 471, 488-91 (1999).  Plaintiffs have not adequately pleaded such a claim.[5]  The standard set forth in *AADC* comports with the rational basis standard applied in *Hawaii*.  The Supreme Court drew this principle of rational basis review from a series of cases in this area, including from *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972), setting forth such a deferential standard of review.  *See Hawaii*, slip op. at 31 (finding the Supreme Court has "reaffirmed and applied its deferential standard of review across different contexts and constitutional claims" in this realm).  While *AADC* itself involved a group of aliens who alleged that they had been targeted for deportation because of their membership in a political group, the NSEERS cases cited in Defendants' opening brief correctly recognize that the reasoning of *AADC* applies equally to enforcement actions that occur in the context of broader, programmatic policies based on country-level facts and circumstances.  *See Kandamar v. Gonzales*, 464 F.3d 65, 73-74 (1st Cir. 2006) ("Every court to address the issue has rejected a challenge to NSEERS registration on equal protection grounds. . . . To be sure, Moroccan nationals were required to register with

---

[5] Citing *Batalla Vidal v. Nielsen*, 291 F. Supp. 3d 260 (E.D.N.Y. 2018), and *Regents of the University of California v. DHS*, 298 F. Supp. 3d 1304 (N.D. Cal. 2018), Plaintiffs dispute the extension of the *AADC* standard in this context.  The Government respectfully disagrees with those recent decisions concerning the termination of the Deferred Action for Childhood Arrivals ("DACA") policy, and has sought interlocutory review of these rulings.  *See* Order at 7, *Batalla Vidal*, No. 16-4756 (E.D.N.Y. Apr. 30, 2018), ECF No. 269 (granting Government's motion to certify order for interlocutory appeal); Notice of Appeal, *Regents*, No. 3:17-cv-05211-WHA (N.D. Cal. Jan. 16, 2018), ECF No. 241.

DHS while a person in the same situation but not from one of the NSEERS countries would not have been placed in removal proceedings.  However, a claim of selective enforcement based on national origin is virtually precluded by [*AADC*] . . . ."); *Hadayat v. Gonzales*, 458 F.3d 659, 665 (7th Cir. 2006) ("Although [*AADC*] leaves open a narrow exception for the 'rare case in which the alleged basis of discrimination is . . . outrageous . . .' Hadayat's conclusory comments regarding the allegedly discriminatory effect of NSEERS do not come close to meeting this high burden."), *reh'g denied* (Oct. 26, 2006); *see also Malik v. Gonzales*, 213 F. App'x 173, 174-75 (4th Cir. 2007) (per curiam).

The NSEERS cases are similar to the case at bar, except that here Plaintiffs challenge policy decisions before they take effect (and thus before Plaintiffs are at risk of removal), whereas the NSEERS cases involved challenges in the removal context.  *See Hawaii*, slip op. at 31 ("Lower courts have similarly applied *Mandel* to broad executive action." (citing *Rajah v. Mukasey*, 544 F.3d 427, 433, 438-439 (2d Cir. 2008))).  But that is a distinction without a difference with respect to the standard of review to be applied to this case.  While Plaintiffs attempt to distinguish *Kandamar* on the ground that it "addressed classifications based on national origin in the immigration context, not race," Pls.' Opp'n at 21, it surely is not the law that an artful pleader could bypass a deferential standard of review simply by characterizing an immigration classification as based on race rather than alienage.  Moreover, as Defendants explained previously, *see* Mem. of Reasons in Supp. of Defs.' Mot. to Dismiss First Am. Compl. ("MTD") at 15-16, ECF No. 25, TPS determinations distinguish between countries in a manner that impacts individuals on the basis of their nationality (political concept); such determinations have nothing to do with an individual's race or national origin (social concept).  These determinations therefore are not suspect.  *See Kandamar*, 464 F.3d at 72 ("Congress may permissibly set immigration criteria based on an alien's nationality or place of origin.  The Supreme Court has long held that judicial review of line-drawing in the immigration context is deferential."); *see also Rajah*, 544 F.3d at 435 ("[I]mmigration regulation differs fundamentally from [other] legal contexts . . .

because classifications on the basis of nationality are frequently unavoidable in immigration matters.").

Because the *AADC* standard controls, to prevail on their animus theory Plaintiffs must set forth facts amounting to "clear evidence" of "outrageous" discrimination by the Secretaries. Plaintiffs have not done so.  Instead, they rely on reported statements by persons outside the TPS decisionmaking tree, DHS press releases that mention TPS only in passing, and allegations of pressure by White House officials.  But as Defendants pointed out in their opening brief, in the face of such alleged pressure, Acting Secretary Duke declined to terminate TPS for Honduras, *see Extension of the Designation of Honduras for Temporary Protected Status*, 82 Fed. Reg. 59,630-02 (Dec. 15, 2017).  She extended the TPS designation for South Sudan, *see Extension of South Sudan for Temporary Protected Status*, 82 Fed. Reg. 44,205-01, 44,206 (Sept. 21, 2017), and Secretary Nielsen more recently extended TPS for Syria, *see Extension of the Designation of Syria for Temporary Protected Status*, 83 Fed. Reg. 9329-02 (Mar. 5, 2018).  These extension decisions undercut Plaintiffs' theory that DHS is wielding TPS to further some kind of discriminatory scheme.  *See Hawaii*, slip op. at 33 ("It cannot be said that it is impossible to 'discern a relationship to legitimate state interests' or that the policy is 'inexplicable by anything but animus.'  Indeed, the dissent can only attempt to argue otherwise by refusing to apply anything resembling rational basis review.").  Plaintiffs have not come close to carrying their burden at the pleading stage, and so the Court should dismiss their equal protection claim with prejudice.[6]

C.  The TPS Decisions Were Rational, and That Is All the Due Process Clause Requires.

Plaintiffs have not adequately alleged that the Secretaries' decisions to terminate TPS for Haiti, El Salvador, and Honduras were based on discriminatory animus.  Nor have they shown that

---

[6] Plaintiffs reference e-mails involving an official at U.S. Citizenship and Immigration Services ("USCIS").  *See* Pls.' Opp'n at 14 n.2.  These e-mails date mostly to spring of 2017, when John Kelly was Secretary of Homeland Security.  Given that Kelly made none of the challenged TPS decisions, it is unclear what significance these e-mails could possibly have for this case.  For that matter, Kelly *extended* TPS for Haiti in May 2017.  *See Extension of the Designation of Haiti for Temporary Protected Status*, 82 Fed. Reg. 23,830-01 (May 24, 2017).

these decisions were otherwise irrational.  Defendants previously identified the immigration classification line of cases as the closest analog for purposes of evaluating Plaintiffs' equal protection challenge to country-based determinations.  *See* MTD at 16.  The fit is not perfect; as discussed above, these unreviewable country-level TPS determinations should not give rise to an equal protection challenge *at all*.  But if the Court disagrees with Defendants' threshold arguments and addresses whether Plaintiffs have pleaded legally cognizable claims, the immigration cases provide the most instructive framework.  And under those cases, it is clear that rational-basis review applies.  *See, e.g., Rivas v. U.S. Att'y Gen.*, 765 F.3d 1324, 1328-29 (11th Cir. 2014) ("Classifications of immigrants, including those in section 212 of the Immigration and Nationality Act, are subject to minimal scrutiny." (citation omitted)); *Bruns v. Mayhew*, 750 F.3d 61, 66 (1st Cir. 2014) ("Because Congress acts with plenary authority when it legislates the rights and benefits to be afforded aliens present in this country, such congressional acts are appropriately afforded rational basis judicial review.").  Plaintiffs accuse the Government of a "willful misreading of the[ir] claims," asserting that the standard of review should be elevated where Plaintiffs have pleaded racial animus.  Pls.' Opp'n at 20.  But as discussed above, it cannot be that a litigant could avoid deference in the immigration context by recasting a distinction drawn on the basis of alienage as one drawn along racial lines.  Such a tactic, if permitted, would largely defeat the deference the Supreme Court and lower courts have reserved for the Executive in this sensitive arena.  To be sure, under rational-basis review, a court would rightly enjoin as unconstitutionally irrational any governmental action that could only be explained by animus against a group bound by a common, immutable trait.  As explained, however, the Secretaries' decisions here are rationally explained by their analysis of the various country conditions.  The point simply is that this Court in evaluating the Secretaries' TPS decisions, to the extent such decisions are even reviewable, should consider no more than whether the decisions were rational.

Plaintiffs may not agree with the Secretaries' decisions.  They may think the Secretaries should have weighed the totality of the circumstances differently.  A reasonable person might draw a different conclusion about TPS for any of these countries.  Or, as Amici States set forth, a

reasonable person might disagree as a matter of principle with the termination of TPS given how integrated in American society many TPS recipients have become.  *See* Br. of Amici States at 8-15, ECF No. 39.  But none of that should inform the Court's equal protection analysis, because the Secretaries' decisions were rational in constitutional terms—*i.e.*, there is some "reasonably conceivable state of facts that could provide a rational basis" for them, *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).  The *Federal Register* notices provide far more detail than the Constitution would require, reciting, *e.g.*, a decline in internally displaced persons, infrastructural improvements, and generally positive economic performance in Haiti; completion of many reconstruction projects and a record-high gross domestic product in El Salvador; and improving food security and sustained housing growth in Honduras.  *See Termination of the Designation of Haiti for Temporary Protected Status*, 83 Fed. Reg. 2648-01 (Jan. 18, 2018); *Termination of the Designation of El Salvador for Temporary Protected Status*, 83 Fed. Reg. 2654-01 (Jan. 18, 2018); *Termination of the Designation of Honduras for Temporary Protected Status*, 83 Fed. Reg. 26,074-01 (June 5, 2018).  These matters of public record aptly demonstrate that the Secretaries acted rationally when they terminated TPS for these countries.  *See Hawaii*, slip op. at 34 (finding that "in each case the determinations were justified by the distinct conditions in each country").

## III.     The Secretaries' Decisionmaking Process, as Reflected by the *Federal Register* Notices, Was Consistent with the Statutory Framework and with Past Practice.

Plaintiffs contend that the Secretaries' alleged failure to consider intervening country conditions in determining whether to extend or terminate TPS violates the APA both because this alleged failure is inconsistent with the statutory framework and because the Secretaries should have promulgated their purported "new rule" via notice and comment.  Plaintiffs are wrong on both counts, but the Court need not even reach these arguments because they are foreclosed by the APA itself.  *Compare* 5 U.S.C. § 701(a) ("This chapter applies . . . except to the extent that . . . statutes preclude judicial review[.]"), *with* 8 U.S.C. § 1254a(b)(5)(A) ("There is no judicial review of any determination . . . with respect to the designation, or termination or extension of a

designation, of a foreign state under this subsection."). Plaintiffs contend that their "new rule" theory is not really a challenge to the "substance of the particular determinations terminating TPS for El Salvador, Haiti, and Honduras," and that the jurisdiction-stripping provision therefore should not apply. Pls.' Opp'n at 23. But even if such a distinction were meaningful, Plaintiffs are not simply challenging the Secretaries' decisionmaking *methods*; they are challenging the *decisions themselves*. *See* First Am. Compl. ¶ 1, ECF No. 21 (the "decisions . . . to terminate TPS . . . were impermissibly infected by invidious discrimination . . . and therefore cannot stand"); ¶ 274 ("Plaintiffs will suffer irreparable injury resulting from the arbitrary termination of the TPS designations"); ¶ 279 ("Defendants' terminations of TPS pursuant to its newly adopted rules should be held invalid and set aside under the APA"). Plaintiffs should not be allowed to recast their claim as collateral (while seeking the same underlying relief) so as to benefit from the APA's substantive provisions while avoiding its strictures. And because Plaintiffs challenge particular TPS termination decisions, their case is far afield of *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 494 (1991) (judicial review remained available despite jurisdiction-stripping provision where plaintiffs did "not seek review on the merits of a denial of a particular application").[7]

---

[7] Plaintiffs cite *Jafarzadeh v. Duke*, 270 F. Supp. 3d 296 (D.D.C. 2017), *see* Pls.' Opp'n at 23, which applied *McNary* where a plaintiff challenged USCIS procedures for adjudicating an application for adjustment of status. The court correctly recognized that "*if* what the plaintiffs seek is review of USCIS's denial of [plaintiff's] application, then this Court is not empowered to grant them any relief." *Jafarzadeh*, 270 F. Supp. 3d at 306. To the extent the court believed it could enter an order requiring USCIS to "reconsider [plaintiff's] application, this time following procedures that are in accordance with the law," *id.*, Defendants respectfully disagree that such a remedy would have been available in light of 8 U.S.C. § 1252(a)(5), which is in any event a far narrower provision than the provision at issue here. *Compare* 8 U.S.C. § 1252(a)(5) (channeling review of an "order of removal" to courts of appeal), *with id.* § 1254a(b)(5)(A) (barring altogether review of TPS "determination[s]"). Amici States attempt to bolster the argument with a cite to *Cho v. Gonzales*, 404 F.3d 96 (1st Cir. 2005), *see* Br. of Amici States at 7, but that case is similarly unhelpful for Plaintiffs' position. *See Cho*, 404 F.3d at 98-99 (Attorney General's legal determination that plaintiff was ineligible as a matter of law for a hardship waiver because she did not marry in good faith was not a decision "specified . . . to be in the discretion of the Attorney General" (citation omitted)). Plaintiffs and Amici also cite *Regents*, but that case is irrelevant, as it addresses not a judicial review preclusion provision but instead circumstances in which an action is committed to agency discretion, *see* 5 U.S.C. § 701(a)(2).

Even if the Court concludes that APA review is potentially available here, the Court should reject Count 3 on its merits.  Plaintiffs' theory that the Secretary committed a "mistake of law" rests on a misreading of the statutory framework.  Subparagraph (A) of 8 U.S.C. § 1254a(b)(3) directs the Secretary to periodically "review the conditions in the foreign state . . . for which a [TPS] designation is in effect . . . and . . . determine whether the conditions *for such designation* . . . continue to be met."  8 U.S.C. §  1254a(b)(3)(A) (emphasis added).  "Such designation" plainly refers to the antecedent decision to designate a country for TPS under one of the three qualifying circumstances (armed conflict, disaster, extraordinary conditions).  It does not, as Plaintiffs suggest, impose on the Secretary a recurring obligation to assess whether *any* of those qualifying circumstances might apply and, if so, to extend TPS accordingly.  Of course, the Secretary may exercise discretion to *redesignate* a country for TPS if she finds that there has been a subsequent event that would make a redesignation appropriate under the statute, but extensions simply carry forward a prior designation and must take account of the basis for that prior designation, as the statutory language makes clear.  *See* 8 U.S.C. §  1254a(b)(3)(B) (termination flows from the Secretary's determination "under subparagraph (A)"); *id.* § 1254a(b)(3)(C) (extension flows from the Secretary's determination "under subparagraph (A)").  That is how the Government has properly interpreted the statute since the inception of the TPS program.  *See, e.g.*, *Termination of Designation of Kuwait Under Temporary Protected Status Program*, 57 Fed. Reg. 2930-03, 2931 (Jan. 24, 1992); *Termination of Designation of Lebanon Under Temporary Protected Status Program*, 58 Fed. Reg. 7582-02, 7582 (Feb. 8, 1993).

Just as Plaintiffs misread the statute, they also misapprehend the public record.  The basis for their "new rule" theory is that the Secretaries ostensibly did not take account of intervening circumstances in finding that conditions in Haiti, El Salvador, and Honduras had improved such that TPS was no longer warranted.  But it is clear from the *Federal Register* notices that the Secretaries considered current environmental, economic, and societal conditions, and those conditions necessarily are impacted by intervening circumstances.  In fact, the *Federal Register* notice announcing the termination of TPS for Honduras *explicitly* takes account of intervening

12

events.  *See Termination of the Designation of Honduras for Temporary Protected Status*, 83 Fed. Reg. at 26,076 (discussing "negative environmental conditions unrelated to Hurricane Mitch over the intervening years," such as coffee rust, pine beetle plague, and drought, as well as the country's response to these conditions).  While the Secretaries may have focused on the lingering effects of the disasters supporting the TPS designations for these countries, that is the same approach that officials in prior Administrations have taken.  Prior Administrations terminated TPS for countries despite ongoing crises.  *See, e.g.*, *Termination of the Designation of Montserrat Under the Temporary Protected Status Program*, 69 Fed. Reg. 40,642-01, 40,644 (July 6, 2004); *Termination of Designation of Angola Under the Temporary Protected Status Program*, 68 Fed. Reg. 3896-01, 3896 (Jan. 27, 2003); *Termination of the Province of Kosovo in the Republic of Serbia in the State of the Federal Republic of Yugoslavia (Serbia-Montenegro) Under the Temporary Protected Status Program*, 65 Fed. Reg. 33,356-01, 33,356 (May 23, 2000).  On the flip side, prior Administrations also linked TPS extensions to the failure to recover adequately from the crises underlying the initial designation, just as the Secretaries have done here.  *See, e.g.*, *Extension of the Designation of El Salvador for Temporary Protected Status*, 81 Fed. Reg. 44,645-03, 44,647 (July 8, 2016) ("Although progress has been made in repairing physical damage caused by the 2001 earthquakes, infrastructure challenges remain."); *Extension of the Designation of Honduras for Temporary Protected Status*, 81 Fed. Reg. 30,331-02, 30,333 (May 16, 2016) ("Honduras continues to suffer the residual effects of the storm."); *Extension of the Designation of Haiti for Temporary Protected Status*, 80 Fed. Reg. 51,582-01, 51,583 (Aug. 25, 2015) ("Many of the conditions prompting the original January 2010 TPS designation and the May 2011 redesignation persist . . . .").  Plaintiffs have not plausibly alleged that there is a "new rule" or that the Secretaries deviated from the statutory framework and settled administrative practice.[8]

---

[8] Plaintiffs do not even address the *Federal Register* notices that Defendants cited in their opening brief, asserting that it is a "factual issue" whether Defendants have adopted a new rule Pls.' Opp'n at 26.  There is no issue at all since Plaintiffs have come forward with *no* plausible allegations to counter the public record.  Moreover, Plaintiffs have not alleged when, how, or by whom this new rule was supposedly promulgated, and thus fail to attack a particular agency action, as the APA requires.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).

For that reason, Plaintiffs likewise have not plausibly alleged that the Secretaries "failed to explain or justify their change in policy." Pls.' Opp'n at 26. Plaintiffs have not shown that there is *any* change in policy. Thus, *NLRB v. Lily Transportation Corporation*, 853 F.3d 31 (1st Cir. 2017), is inapposite, as in that case the NLRB expressly adopted through adjudication one rule, then a different rule, then a twist on the first rule (and the court ultimately found *adequate* the agency's explanation for its doctrinal shift). Nothing like that happened here. Nor, even if the Secretaries had adopted through the challenged TPS decisions some nuanced interpretation of their statutory authority, would the Secretaries then be required to promulgate that interpretation through notice-and-comment rulemaking, as agencies are "not precluded from announcing new principles in an adjudicative proceeding and . . . the choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion." *Miguel-Miguel v. Gonzales*, 500 F.3d 941, 950 (9th Cir. 2007) (alterations in original) (quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974)). Moreover, a government official's reading of a statute that vests a decision in the official's judgment is not tantamount to a substantive rule. It very likely is not a rule at all, as the official's statutory interpretation and exercise of judgment is not "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency," 5 U.S.C. § 551(4). It is *at most* an interpretive rule, and *Perez v. Mortgage Bankers Association*, 135 S. Ct. 1199, 1206 (2015), which Plaintiffs fail to distinguish or even cite in their brief, makes clear that an interpretive rule is not subject to notice and comment.[9] Plaintiffs' "new rule" theory was clearly manufactured to evade a plain jurisdictional bar and should be rejected by the Court.

---

[9] *New Hampshire Hospital Association v. Azar*, 887 F.3d 62 (1st Cir. 2018), does not suggest differently. In that case, HHS promulgated through a "Frequently Asked Questions" document new guidance providing that a cap on certain Medicaid payment adjustments for hospitals that serve large indigent populations would be lowered based on Medicare and private insurance reimbursements for patients with dual coverage. HHS was "unable to point to any evidence that the agency had ever previously enforced the policy articulated in the FAQs." *Id.* at 73. Here, there is no document (whether formal or informal) codifying a change in policy.

**IV.      This Court Lacks Jurisdiction to Enter Equitable Relief Against President Trump.**

Plaintiffs finally contend that President Trump should remain a party to this action, notwithstanding the Supreme Court's unambiguous recognition over 150 years ago that federal courts have "no jurisdiction of a bill to enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. (4 Wall) 475, 501 (1866); *see also Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992) (plurality opinion) (entry of injunctive relief against President was "extraordinary" and "should have raised judicial eyebrows"); *id.* at 827 (Scalia, J., concurring in part and concurring in the judgment) ("apparently unbroken historical tradition supports the view" that courts may not order the President to "perform particular executive . . . acts"). Plaintiffs characterize Defendants' argument as seeking the President's dismissal "in the interest of comity." Pls.' Opp'n at 29. It is not merely a question of comity, it is a question of judicial power. *See Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010); *Willis v. HHS*, 38 F. Supp. 3d 1274, 1277 (W.D. Okla. 2014); *McMeans v. Obama*, No. 11-891-RGA, 2011 WL 6046634, at *3 (D. Del. Dec. 1, 2011). Plaintiffs also cite *Knight First Amendment Institute at Columbia University v. Trump*, No. 17 Civ. 5205 (NRB), 2018 WL 2327290 (S.D.N.Y. May 23, 2018), *appeal docketed*, No. 18-1691 (2d Cir. June 5, 2018), *see* Pls.' Opp'n at 30, for the proposition that correction of an ostensibly unconstitutional act is essentially a ministerial duty. But that case (pending on appeal) involved the decision to block or unblock a follower on Twitter, which can hardly be compared to the decision to designate, extend, or terminate TPS for a country.

## CONCLUSION

The Court should grant Defendants' motion to dismiss.[10]


Dated:  June 26, 2018                               Respectfully submitted,

                                                    CHAD A. READLER
                                                    Acting Assistant Attorney General

---

[10] Plaintiffs fail to demonstrate why their causes of action for mandamus and declaratory judgment should survive this motion to dismiss. The Court should dismiss Counts 5 and 6 with prejudice.

ANDREW E. LELLING
United States Attorney

JOHN R. TYLER
Assistant Branch Director

*/s/ Joseph C. Dugan*
JOSEPH C. DUGAN (Ohio Bar # 0093997)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
Tel.: (202) 514-3259
Fax: (202) 616-8470
Email: Joseph.Dugan@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the Court's CM/ECF system will be served electronically on the registered participants as identified on the NEF and that a PDF will be served on June 26, 2018, via e-mail to counsel not so registered per prior agreement.

*/s/ Joseph C. Dugan*
JOSEPH C. DUGAN