```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


 _____

 CENTRO PRESENTE, et al.,

                        Plaintiffs,     Civil Action
                                        No. 18-10340-DJC
 V.
                                        September 7, 2018
 DONALD J. TRUMP, et al.,                3:05 p.m.

                        Defendants.
 _____



              TRANSCRIPT OF SCHEDULING CONFERENCE

            BEFORE THE HONORABLE DENISE J. CASPER

                 UNITED STATES DISTRICT COURT

                JOHN J. MOAKLEY U.S. COURTHOUSE

                       1 COURTHOUSE WAY

                       BOSTON, MA  02210




               DEBRA M. JOYCE, RMR, CRR, FCRR
                   Official Court Reporter
                John J. Moakley U.S. Courthouse
                 1 Courthouse Way, Room 5204
                      Boston, MA  02210
                    joycedebra@gmail.com
```

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFFS:

 3   KEVIN P. O'KEEFE, ESQ.
     Choate, Hall & Stewart
 4   Two International Place
     100-150 Oliver Street
 5   Boston, MA 02110
     617-248-4025
 6
     OREN N. NIMNI, ESQ.
 7   61 Batterymarch Street 5th Floor
     Boston, MA 02110
 8   206-200-9088

 9
     FOR THE DEFENDANTS:
10
     JOSEPH C. DUGAN, ESQ.
11   United States Department of Justice, Civil Division
     20 Massachusetts Ave. NW
12   Washington, DC 20530
     202-514-3259
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                      P R O C E E D I N G S
 2              (The following proceedings were held in open
 3   court before the Honorable Denise J. Casper, United States
 4   District Judge, United States District Court, District of
 5   Massachusetts, at the John J. Moakley United States Courthouse,
 6   1 Courthouse Way, Boston, Massachusetts, on September 7, 2018.)
 7              THE CLERK:  Civil action 18-10340, Centro Presente v.
 8   Trump.
 9              Would counsel please identify themselves for the
10   record.
11              MR. O'KEEFE:  Kevin O'Keefe from Choate, Hall &
12   Stewart on behalf of the plaintiffs.
13              MR. NIMNI:  Oren Nimni, Lawyers Committee for Civil
14   Rights and Economic Justice for the plaintiffs.
15              THE COURT:  Good afternoon, counsel.
16              MR. NIMNI:  Good afternoon, your Honor.
17              MR. DUGAN:  Joseph Dugan with the Department of
18   Justice, Civil Division for the defendants today.
19              THE COURT:  Good afternoon, counsel.
20              Counsel, I know that we're here for an initial
21   scheduling conference.  I have had a chance to review Docket
22   50, the parties' joint statement.  I know there are some
23   disagreements between counsel I think more about the scope of
24   discovery than necessarily the schedule, but I'll turn to that
25   in a moment.
```

1           Counsel, as I understand it, and as I'm sure you heard
2    me ask counsel before you, I understand there's no consent to
3    trial before a magistrate judge in this matter; is that fair to
4    say?
5           MR. O'KEEFE:  Correct, your Honor.
6           MR. DUGAN:  Yes, your Honor.
7           THE COURT:  So, secondly, has there been a settlement
8    demand made here?  I recognize that some of the relief sought
9    is injunctive and declaratory, so perhaps there's still very
10   much a dispute between the parties that perhaps cannot be
11   resolved at this very moment in time, but I'll always ask.
12          Has there been a demand made?
13          MR. O'KEEFE:  Yes, your Honor, we made a demand.
14          THE COURT:  And has there been a response?
15          MR. DUGAN:  I have taken the offer to my clients, and
16   I can confirm today we will not be accepting at this time.
17          THE COURT:  So with that said, counsel, if at some
18   point, for whatever reason, the parties think they might be
19   closer together in resolving this matter short of any court
20   action or short of trial, you can reach out to my session at
21   any point to get a referral to one of the magistrate judges for
22   mediation.  They're scheduling about six weeks out, so you may
23   want to keep that in mind in terms of your perhaps informal
24   discussions along the way.
25          Counsel, in terms of the proposed schedule, and I'll

1    give each side a chance to be heard if you want to add anything
2    to your papers, I think there is a disagreement about the scope
3    of discovery being limited to the administrative record or
4    perhaps broader.  I also have a question about sequencing, and
5    frankly, allowing enough time before the first of the TPS
6    statuses or change -- I think that's for Haiti in July of next
7    year.
8            MR. O'KEEFE:  That's correct.
9            THE COURT:  So, counsel, I'll hear from plaintiff
10   first in regards to your view on the scope of discovery or
11   anything else related to the schedule.
12           MR. O'KEEFE:  Thank you, your Honor.
13           We believe that limiting the scope of discovery to the
14   administrative record is somewhat beside the point with respect
15   to our claims.
16           As we discussed in our argument before your Honor, our
17   challenge is not necessarily to the decisions themselves but to
18   the process by which they were arrived at, including what we
19   believe to be an influence of improper racial animus.  So,
20   therefore, reviewing the record as currently constructed, and
21   my brother has produced the entire administrative record --
22   well, I won't say the entire record, it doesn't seem there's
23   any area of supplementation -- but we believe it's too narrowly
24   constrained and doesn't really address the substance of
25   plaintiffs' claims in this action.

1           The similar issue was presented in the Ramos case in
2    the Northern District of California, and some limited discovery
3    beyond the administrative record was allowed.
4           THE COURT:  And, counsel, I guess a few things, and
5    I'll ask this of both sides.
6           Counsel, I don't know that I typically set expert
7    disclosure deadlines that are separate from expert report
8    deadlines, and -- meaning, the way I understand the proposal,
9    there's sort of separate dates for each of those.  I'd be
10   inclined to consolidate those.  I'm not sure what action would
11   need to be taken between the disclosure and a report for the
12   purposes of the other side responding with their report or
13   disclosure.
14          And then -- so, anyway, I just say that.
15          And then I guess, counsel, what is the nature of
16   expert discovery that you need -- again, this is to both
17   sides -- that either side thinks it needs before summary
18   judgment?  Meaning, is this an instance in which I should have
19   the parties go through all fact discovery and have summary
20   judgment, and depending on what the outcome is, the parties
21   proceed or don't proceed to expert discovery?  Or is there
22   something about the expert discovery that is necessary for the
23   purposes of deciding summary judgment?
24          MR. O'KEEFE:  I think that may be an appropriate
25   alternative, your Honor.  To be candid -- we had discussed this

1  at some length during our prior conference -- the plaintiffs
2  are not positive that we will need any expert discovery at this
3  point.
4          THE COURT:  Right.  It was just based on your
5  arguments before me, I just wasn't clear on what the expert
6  discovery would be.
7          MR. O'KEEFE:  The -- you know, without locking
8  ourselves in, we had considered whether expert testimony will
9  be appropriate as to the conditions of the various countries,
10 the effects of the TPS terminations of those countries.
11         THE COURT:  Okay.
12         MR. O'KEEFE:  And then possibly a process-oriented
13 expert in terms of comparing practices prior to the current
14 administration with the current administration.
15         That being said, we have been reviewing the
16 administrative record that has been produced so far, and
17 without promising anything, it seems less likely at this stage.
18         THE COURT:  Okay.  Counsel, I'll let you respond to
19 both my questions and the proposal about scope.
20         MR. DUGAN:  Yes, your Honor.  I'll address the scope
21 piece first.
22         This is fundamentally an APA action, it is so for at
23 least two reasons:  One, because the APA itself contemplates
24 that constitutional claims, as well as other kinds of claims,
25 will be brought pursuant to its framework; and two, because the

1  plaintiffs here have invoked the APA for two of their four
2  substantive claims.  I think the Court's analysis at the motion
3  to dismiss stage is important here in determining the scope
4  question as well.
5           As I understand the Court's analysis in its opinion,
6  it appears that the Court found that it had subject matter
7  jurisdiction, at least in significant part because the nature
8  of plaintiffs' claims is collateral, right, it's sort of a
9  process-based challenge within the reasoning of McNary.
10 Although the government disagrees, we appreciate the Court's
11 analysis in that record.
12          With that being so, the new rule permeates their
13 constitutional claims as well as their APA claims.
14 Fundamentally that's what they're arguing, they're saying
15 there's a new rule that's arbitrary and capricious in part
16 because they think it's based on racial or otherwise improper
17 animus.  So I understand that to be their theory of the case,
18 but because their case is fundamentally an APA case, it should
19 be confined to the normal rules for APA litigation, which I
20 think the Court -- I'm sure the Court is familiar with those
21 rules, but, generally speaking, it's a record, and then the
22 burden is on the party who seeks to expand the record to show
23 that supplementation is appropriate.
24          I don't think that we've heard from the plaintiffs yet
25 as to why any supplementation would be appropriate here.

1          THE COURT:  And I guess, counsel, just, you know,
2    going back, harkening back to my memory of the arguments on
3    either side and my M and O, there's certainly a claim that is
4    being allowed to go forward about sort of -- I'll just
5    paraphrase it as sort of undue influence or improper influence
6    over the process, which to me just sounds as if that by itself
7    is beyond the administrative record.  I understand the defense
8    has a different view of that and certainly would have a
9    different view about what weight it should have in any
10   analysis.  But I can't -- I can't say as I sit here now that
11   that is clearly beyond scope of discovery given what the claims
12   are, but I'll let you respond.
13         MR. DUGAN:  Yes, your Honor.  Just a couple of points
14   briefly.
15         I would say, first, I understand the Court's concern.
16   I think the risk is that any litigant could allege in an APA
17   context that the reason behind the decision-maker's decision
18   was something other than what the decision maker said in the
19   record, right.  It wouldn't have to be racial animus, it could
20   be anything.  So I think that's the reason why courts have been
21   hesitant to allow supplementation as a matter of course, even
22   in cases where there are constitutional claims, indeed, even in
23   cases where there are equal protection claims, an example would
24   be citing the Chiayu Chang opinion that I cited in our short
25   joint statement, out of D.D.C.; there are others.

1          The concern is we don't want to incentivize litigants
2     to include constitutional or other types of claims that would
3     automatically expand the record or the scope of judicial review
4     beyond what Congress contemplated in the APA.
5          And the other point in response to your Honor's
6     question, it seems to me that even accepting plaintiffs'
7     theory, the record should be the starting point, and they
8     should be looking at the record to determine does the record --
9     is it consistent with what they believe to have happened here.
10    It may very well be they review the record and determine, based
11    on the contents of the record, they can go forward to summary
12    judgment on the record alone.  Contrary, they may determine
13    there are specific things they need to better sort of sound out
14    their theory of the case.
15         But I think rather than sort of opening up discovery,
16    it should be -- the onus should be on the plaintiffs to show
17    why the record is adequate in specific ways.  I think that's
18    what courts have contemplated in the line of cases, <u>Overton</u>
19    <u>Park</u>, other cases that talk about record supplementation.
20         The parties have agreed on dates and deadlines, as the
21    Court has seen, sort of subject to the Court's determination on
22    this threshold issue.  But my thought would be we should
23    resolve the threshold issue first.  It seems there are a couple
24    of ways to do that.  We could submit further briefing if the
25    Court wants it.  The government would be happy to provide

1   further briefing if the Court feels that would be helpful.
2   Alternatively, it seems that the plaintiffs should be required
3   to come forward with some kind of showing as to why the record
4   we produced is inadequate.
5           And just one more point, your Honor, on the record
6   piece.  As I'm sure plaintiffs have noted in their review, it's
7   a pretty robust record that we've produced.  We've included a
8   lot of material that we would ordinarily withhold it
9   deliberative.  We've done that in part because we think it's
10  consistent with the statute that requires consultation between
11  the Secretary of Homeland Security and other agencies.  In part
12  we've done it because of Ramos.  As plaintiffs mentioned, the
13  Ramos Court has moved at a somewhat different pace.  There's
14  already PI briefing in that case.  We just filed our opposition
15  last night, very late I think.  And so because of some of the
16  decisions in the Ramos court, we've chosen to voluntarily
17  produce to plaintiffs material that is eminently deliberative:
18  handwritten notes, documents reflecting consultations with
19  White House officials, the kind of stuff that I think they
20  would want to build out their theory of the case.
21          So, again, I would say rather than sort of
22  free-flowing discovery, it should be, especially in this
23  posture, the burden should be on plaintiffs to show what it is
24  they need and why.
25          MR. O'KEEFE:  If I may, your Honor?

```
 1                THE COURT:  Yes.
 2                MR. O'KEEFE:  So a couple of points.
 3                We have been drafting the specific discovery requests,
 4     but after consultation with my brother, we decided that we
 5     would sort of hold that in abeyance until we had a chance to
 6     review the administrative record.  And that process is ongoing,
 7     and I can testify or state truthfully that certain requests
 8     have been sort of stricken, draft requests have been stricken
 9     on the basis of that.  And we do appreciate the -- my brother's
10     willingness to sort of turn over documents that have been
11     released pursuant to the Ramos decision.
12                But responding to the substance here, I think there's
13     one broad category of documents that certainly will not be
14     encapsulated by any of the administrative records, which is the
15     history of how the statute has been interpreted and
16     administered prior to the current administration.
17                This is not a typical APA case in the sense that we
18     can't point to a specific Federal Register entry or a CFR cite
19     to find the rule.  We need to sort of divine this from prior
20     practices, through close scrutiny of prior practices and we
21     believe deposition testimony from former officers and compare
22     it to the current record that was delivered to us in
23     conjunction with the specific determinations.
24                THE COURT:  As to which particular claims or as to
25     more than one claim?
```

1         MR. O'KEEFE:  I believe as to the APA notice and
2    comment, and then also as to the equal protection as one of the
3    <u>Arlington Heights</u> factors is a change in procedure that is not
4    borne out by that sort of prior administrative actions.
5         In addition, you know, this sort of heart of the claim
6    is that the administrative process that the defendants
7    undertook here was a pretext, so the outcome was already
8    decided, it was just a matter of how they got there and how
9    that was appropriately papered over.
10        So we believe additional discovery surrounding
11   communications between DHS and White House staff, as well as
12   lobbying groups, other interest groups, members of Congress and
13   the like, will certainly have some bearing upon filling in the
14   context of these terminations.
15        THE COURT:  So -- thank you, counsel.
16        Counsel, you can all be seated for the moment.  Just
17   give me a moment here.
18        From the defense side, I'm not sure, counsel, I'm
19   assuming your answer to this, but I'm assuming if the
20   plaintiffs don't necessarily think expert discovery is
21   necessary before summary judgment, the defendants don't have a
22   different view?
23        MR. DUGAN:  No, your Honor.  It's hard for me to see
24   why expert discovery would be necessary.
25        THE COURT:  Okay.

```
 1                 Counsel, give me a moment, please.
 2                 (Pause.)
 3                 THE COURT:  So, counsel, one last question that I
 4    alluded to before.  As I understand it, the first of the
 5    countries at issue here, Haiti, TPS is scheduled to -- TPS
 6    status is scheduled to expire in July.  I believe that's the
 7    first of the countries?
 8                 MR. O'KEEFE:  That's correct, your Honor, July 22nd.
 9                 THE COURT:  So I guess, counsel -- and I think you had
10    flagged obviously wanting to, to the extent possible, to have a
11    ruling, I think the parties anticipate perhaps cross-summary
12    judgment motions.  I had some concerns about that based on the
13    record.  I think under the current proposal the summary
14    judgment motions or cross-motions wouldn't be fully ripe until
15    the beginning of June.  I think it's fair to say I would want a
16    hearing.
17                 I guess, counsel, given that the -- as I understand
18    the plaintiffs' position now, you would have this Court not
19    limit discovery to the administrative record, but you haven't
20    necessarily decided how much more beyond the administrative
21    record is needed because you're still in the process of
22    reviewing it, and I guess I raise this to say do the parties
23    need until April of '19 for discovery?
24                 MR. O'KEEFE:  I don't want to speak for my brother --
25                 THE COURT:  So, meaning, I guess that's what I'm
```

1    concerned about.  I mean, my view on discovery -- and I
2    recognize the defense will disagree with this -- is I certainly
3    understand the argument about the administrative record, but
4    still having the plaintiffs' claims pretty clearly in mind, I
5    can't say that they are strictly limited to the administrative
6    record, because, as one of my questions suggested, I think
7    there's argument about undue influence.  And so I can't say
8    that the discovery here is wide open or far-flung, but I could
9    see things beyond the administrative record and perhaps beyond
10   the deliberative documents that have been produced that might
11   still be relevant and discoverable here.  I'm not sure how far
12   beyond the administrative record, but I'm not prepared to say
13   it's limited to the administrative record.
14          I am concerned, though, that given -- that it's not
15   clear how much beyond the administrative record that having the
16   end of discovery be in April and then have this ripe and have
17   the opportunity to give it the attention it needs before July,
18   I just raise that as a concern, counsel.
19          MR. O'KEEFE:  Your Honor, the concern is well taken.
20   We are mindful of the fact that we are on a somewhat
21   constrained schedule, and we do plan on keeping our discovery
22   requests somewhat narrowed.  We don't -- it benefits no one for
23   us to push the defendants to go on a fishing expedition for
24   everything.
25          So I think what may make sense then is for plaintiffs

1    to formulate an initial set of interrogatories and document
2    requests for service next week and I'll -- I don't want to
3    speak for you, but try to have a meet-and-confer shortly
4    thereafter and raise the issues with your Honor.
5             THE COURT:  So I guess, counsel, here's what I would
6    do at this point.  Counsel, I can give you -- as I said, I've
7    given you a sense of what my view on scope is at this point.  I
8    would adopt the initial disclosures deadline of September 21,
9    2018.  I would adopt what I think is also jointly proposed as
10   August 10 -- excuse me, October 10, 2018 for amendments to the
11   pleadings.
12            I'm inclined to give the parties an opportunity to, as
13   you say, meet and confer and then propose a revised schedule
14   that would take us through the end of fact discovery, and,
15   barring any change articulated by the plaintiffs, would
16   postpone expert discovery until after summary judgment is
17   resolved, and would jump from the end of fact discovery to a
18   briefing schedule on cross-motions to summary judgment and
19   perhaps give you a week or so or two weeks to propose that.
20   And then I would -- I may be able to resolve that just on the
21   papers, or if I thought I needed to talk to you further about
22   the scope of discovery or understanding the schedule, I could
23   do that then, and I would add to what you propose if I adopted
24   a hearing on the cross-motions for summary judgment.  I guess,
25   counsel, I would just hope that the schedule would reflect the

```
 1   Court's concern about sort of the out date in terms of the
 2   status for the first country expiring next summer.
 3            Counsel, does that make some sense?
 4            MR. O'KEEFE:  Yes, your Honor.
 5            MR. DUGAN:  Your Honor, that makes good sense to the
 6   defense.
 7            THE COURT:  Okay.  And, counsel, how much time -- if I
 8   gave you -- actually, if I gave you until September 21st, which
 9   is when your initial disclosures would be due to file a further
10   joint schedule based on your further meet-and-confer?
11            MR. O'KEEFE:  That works for plaintiffs.
12            MR. DUGAN:  Yes, your Honor.
13            THE COURT:  So, counsel, we'll do that.  And I'll stop
14   there in terms of what I'm going to adopt at this moment.  But
15   I understand the parties' position, and perhaps your
16   meet-and-confer will sort of further narrow where the parties
17   have disputes.
18            Thank you.
19            Thank you, counsel.
20            MR. DUGAN:  Thank you, your Honor.
21            MR. O'KEEFE:  Thank you, your Honor.
22            THE CLERK:  All rise.
23            (Court adjourned at 3:29 p.m.)
24                     - - - - - - - - - - - -
25
```

```
 1                      CERTIFICATION
 2        I certify that the foregoing is a correct transcript
 3   of the record of proceedings in the above-entitled matter to
 4   the best of my skill and ability.
 5
 6
 7
 8   /s/Debra M. Joyce                    October 10, 2018
     Debra M. Joyce, RMR, CRR, FCRR       Date
 9   Official Court Reporter
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```