**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

CENTRO PRESENTE, a membership     )
organization, et al.,     )
     )
     Plaintiffs,     )
     )
     v.     )     Case No. 1:18-cv-10340
     )
DONALD J. TRUMP, President of the United     )
States, in his official capacity, et al.,     )
     )
     Defendants.     )
_____)

**<u>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
DISCOVERY FROM THE WHITE HOUSE</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................................ 1

BACKGROUND ............................................................................................................................. 3

STANDARD OF REVIEW ............................................................................................................. 6

ARGUMENT .................................................................................................................................. 7

I.      Plaintiffs' Invitation for this Court to Resolve Questions of Privilege in Determining the Appropriateness of White House Discovery is in Direct Contravention of Supreme Court Precedent. ............................................................................................................................. 7

II.     Plaintiffs Have Available Alternative Avenues of Exploration That Must Be Pursued In Lieu Of Imposing the Burden and Separation of Powers Concerns Contemplated by Discovery on the White House. .......................................................................................... 11

III.    This Court Should Stay Any Order Authorizing Discovery on the White House to Allow Defendants to Consider their Appellate Options. ............................................................. 15

CONCLUSION .............................................................................................................................. 16

# TABLES OF AUTHORITIES

## Cases

*Am. Historical Ass'n v. NARA,*
    402 F. Supp. 2d 171 (D.D.C. 2005) ........................................................................ 8

*Batalla Vidal v. Duke,*
    No. 16-CV-4756, 2017 WL 8773110 (E.D.N.Y. Oct. 17, 2017) ........................................ 9, 14

*Bhattarai, et al. v. Nielsen, et al.,*
    No. 3:19-CV-731 (N.D. Cal.)………………………………………………………………....3, 4

*Casa de Maryland, et al., v. Trump, et al.,*
    No. 8:18-CV-845 (D.Md.)………………………………………………………………………3, 5

*Cheney v. U.S. District Court for the District of Columbia,*
    542 U.S. 367 (2004) .......................................................................................... *passim*

*Clinton v. Jones,*
    520 U.S. 681 (1997) ................................................................................................ 8

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992) ................................................................................................ 8

*Herbert v. Lando,*
    441 U.S. 153 (1979) ................................................................................................ 6

*In re Donald J. Trump,*
    No. 18-72159 (9th Cir. Sept. 17, 2018) ……………………………………………………3, 16

*In re Grand Jury Subpoena (Mr. S.),*
    662 F.3d 65 (1st Cir. 2011) ..................................................................................... 15

*In re Kirstjen M. Nielsen, Secretary of Homeland Security,*
    No. 17-3345 (2d. Cir.)………………………………………………………………………..9, 15

*In re Sealed Case,*
    121 F.3d 729 (D.C. Cir. 1997) .................................................................................. 9

*Karnoski v. Trump,*
    No. C17-1297-MJP (W.D. Wash.)………………………………………………………...15

*Lardner v. Dep't of Justice,*
    No. 03-0180, 2005 WL758267 (D.D.C. Mar. 31, 2005)…………………………………..10

*Marbury v. Madison,*
 5 U.S. (1 Cranch) 137 (1803) ................................................................................................ 9

*Mississippi v. Johnson,*
 71 U.S. (4 Wall) 475 (1866) ................................................................................................ 8

*NAACP v. DHS, et al.,*
 No. 1:18-CV-239 (D.Md.) ……………………………………………………………....3

*Nixon v. Fitzgerald,*
 457 U.S. 731 (1982) ...................................................................................................... 8, 9

*Ramos, et al. v. Nielsen, et al.,*
 No. 3:18-CV-1554 (N.D. Cal.)……………………………………………………..3, 4

*Saget, et al. v. Trump, et al.,*
 No. 1:18-CV-1599 (E.D.N.Y.)……………………………………………………3, 5

*United States v. Nixon,*
 418 U.S. 683 (1974) ........................................................................................................ 8

## **Rules**

Fed. R. Civ. P. 26(b)(2)(C)(i) ........................................................................................................ 7

Fed. R. Civ. P. 30(b)(6) ............................................................................................................ 12

**INTRODUCTION**

In this challenge to the Secretary of Homeland Security's decisions to terminate Temporary Protected Status ("TPS"), Plaintiffs now move to compel discovery from the President and his close White House advisors.  In support of their motion, Plaintiffs contend that they need discovery from the White House to determine whether the White House officials "exerted influence" on Department of Homeland Security ("DHS") officials.  When faced with similar arguments, other courts have appropriately limited any discovery of White House communications to those communications contained in an agency's files.  This Court should likewise limit discovery of White House communications to material contained in DHS's files, and reject Plaintiffs' motion to compel discovery on the White House.

Despite Defendants having already produced more than *75,000 pages* in discovery in this matter, Plaintiffs have propounded multiple improper and burdensome discovery requests on the President and his White House advisors.  Such requests are in direct conflict with *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367 (2004), in which the Supreme Court made clear that, given the potential for constitutional confrontation, different rules apply when a party seeks discovery from the White House.  Pursuant to separation-of-powers considerations, the Supreme Court in *Cheney* expressly rejected the notion that the Executive Branch at its highest level shall bear the initial burden of invoking executive privilege with specificity or making particular objections to discovery on a line by line basis in order to safeguard executive functions and maintain the separation of powers.  542 U.S. at 383, 388.

It is, accordingly, improper for Plaintiffs to ask this Court to impose the initial burden on the White House and "in particular President Trump" to collect all documents responsive to their requests and to "log all withheld documents with specific references to . . . privilege(s)."  *See* Plaintiffs' Memorandum to Compel Responses to White House Discovery Requests ("Pls.'

Mem."), ECF No. 75, at 2.  Rather, the predicate question properly before this Court is whether discovery from the White House in the form of the burdensome requests Plaintiffs have propounded should be allowed in the first instance, especially given *Cheney's* direction that a court must "explore other avenues" before triggering separation of powers concerns inherent in discovery propounded on the White House.  *Cheney*, 542 U.S. at 390.  In this case, the alternative avenue for the discovery Plaintiffs seek is for Defendants to search for and review White House communications in DHS files, which Defendants are already doing.  Plaintiffs have provided no basis on which to require the White House to search its own files for such communications.  Such a fishing expedition would impose exactly the type of intrusion into the White House that the Supreme Court in *Cheney* admonished against.

Further, notwithstanding Plaintiffs' conclusory assertion that their discovery is discrete and limited, the requests would impose substantial burdens.  That is best illustrated by Plaintiffs seeking the White House to undergo the burdensome task of preparing for a 30(b)(6) deposition.  But, even beyond that, a close examination of Plaintiffs' document requests demonstrate that they improperly seek "everything under the sky" concerning White House communications about TPS.  *See Cheney,* 542 U.S. at 388.  For example, they seek extensive discovery of former Chief of Staff John Kelly's internal White House communications concerning TPS.  Likewise, they seek extensive internal White House communications concerning the White House's recommendations for upcoming TPS decisions.  Such broad requests reflect the very type of demands that the Supreme Court rejected in *Cheney*.  These requests are particularly unwarranted here given that Plaintiffs seek discovery about whether the Secretary of Homeland Security acted upon purported improper influence from the White House, which can be responded to pursuant to the discovery of documents within DHS's files.

In the event that this Court were to grant a motion permitting discovery on the White House, Defendants respectfully request that the Court stay its Order to allow for Defendants to consider their appellate options. As the Supreme Court found in *Cheney*, mandamus is particularly warranted in addressing a discovery order that demands the White House to search and review documents for privilege. *See Cheney*, 542 U.S. at 381-382. Indeed, just last year, the Ninth Circuit stayed during the pendency of the appeal an order concerning, *inter alia*, White House discovery. *See In re Donald J. Trump,* Order, No. 18-72159 (9th Cir. Sept. 17, 2018), Dkt. No. 36. Here, there is no impending deadline to justify immediate discovery. All of the TPS terminations at issue in this litigation are either enjoined or stayed pending appellate review of a preliminary injunction in the Ninth Circuit, and oral argument has not even yet been scheduled in that matter. Accordingly, this Court should stay any order requiring discovery of the White House to allow for Defendants to consider their appellate options in light of the serious separation of powers concerns that would be implicated by such an order.

## BACKGROUND

This case is one of six cases challenging the recent terminations of TPS for at least one of six countries. *See NAACP v. DHS, et al.*, Civil Action No. 1:18-CV-239 (D.Md.); *Ramos, et al. v. Nielsen, et al.*, Civil Action No. 3:18-CV-1554 (N.D. Cal.); *Saget, et al. v. Trump, et al.*, Civil Action No. 1:18-CV-1599 (E.D.N.Y.); *Casa de Maryland, et al., v. Trump, et al.*, Civil Action No. 8:18-CV-845 (D.Md.); *Bhattarai, et al. v. Nielsen, et al.*, Civil Action No. 3:19-CV-731 (N.D. Cal.). In the present case, Plaintiffs challenge the TPS terminations for Haiti, El Salvador, and Honduras. Those terminations are all currently enjoined or stayed pending further review by the Ninth Circuit. In particular, the district court in *Ramos* entered a preliminary injunction in October 2018 for the terminations of TPS for Haiti and El Salvador, as well as of Nicaragua and Sudan. *See Ramos* (ECF No. 128). That preliminary injunction is now pending before the Ninth Circuit

and currently set to be argued sometime this summer.  *See* Order, No. 18-16981 (9th Cir. March 7, 2019), Dkt. No. 53.  Per agreement of the parties, the district court proceedings are stayed and no termination of any the countries at issue can take effect for nearly six months following any decision by the Ninth Circuit vacating the preliminary injunction.[1]  *See Ramos* (ECF No. 138). Similarly, the parties entered an agreement in *Bhattarai* that stays the terminations of TPS for Honduras and Nepal pending the appellate resolution of the *Ramos* appeal.  *See Bhattarai* (ECF No. 23).  Like the TPS terminations at issue in *Ramos*, the terminations for Honduras and Nepal cannot take effect for nearly six months following any decision to vacate the *Ramos* preliminary injunction.  *See id*.  Given the potential argument dates identified by the Ninth Circuit for *Ramos*, it is extremely unlikely that any termination would be able to take effect this year.

Although the six cases are at various stages of litigation, no court has issued any discovery orders directly to the President or White House officials.  In *Ramos*, the district court entered a preliminary injunction against Defendants without necessitating discovery on the White House. During the course of responding to the court-ordered expedited discovery of DHS in that case, Defendants produced documents within DHS' files containing communications, or notes memorializing those communications, between White House officials and senior DHS officials, including the Acting Secretary of Homeland Security.  *See, e.g.*, *Ramos* (ECF No. 113) (Administrative Record Index for Haiti containing such communications).[2]

---

[1] The stay is for 120 days after the mandate is issued to the district court but, under the rules of the Ninth Circuit, the mandate would not issue for 52 days after any Ninth Circuit opinion vacating the preliminary injunction.  The agreement in *Ramos* allows the plaintiffs to seek discovery prior to the mandate being issue should the Ninth Circuit vacate the preliminary injunction.  *See id*.

[2] For some of these produced documents in that case, Defendants voluntarily produced them and, for others, Defendants were ordered to produce them over their objections.

In *Saget*, which concerns the Haiti termination, Defendants moved on December 5, 2018, for a protective order establishing that Defendants need not respond to discovery propounded on the President or other White House custodians. *See Saget* (*Saget* ECF Nos. 81, 93) ("the *Saget* Motion"). In the *Saget* Motion, Defendants explained, *inter alia*, that they provided a sufficient alternative by reviewing documents within DHS's files for communications with White House officials. *See id*. The *Saget* Motion remains pending before the district court. In the meantime, however, the district court was able to conduct a complete, four-day trial and the parties were able to submit their respective findings of facts and conclusions of law—without the necessity of discovery on the White House. *See Saget*, Minute Entry, January 10, 2019 (noting that "Bench Trial completed on 1/10/2019"); *Saget* ECF Nos. 135-147,153-54. This issue of discovery on the White House has not yet been squarely presented in other TPS litigation.[3]

In the present case, Plaintiffs did not stage their discovery requests by first seeking discovery on DHS before trying to propound discovery on the White House. Rather, on September 18, 2019, they served their first set of discovery requests on *both* the DHS *and* the White House. These requests encompass, *inter alia,* the document requests on the White House and the 30(b)(6) deposition notice on the White House that are the subject of this motion to compel. *See* ECF Nos. 76-1; 76-2. Defendants, recognizing immediately their anticipated objections to discovery on the White House, informed Plaintiffs of these objections within ten days after receiving service of the requests. *See* ECF No. 76-3. Defendants, however, explicitly noted that "Defendants will produce non-privileged documents held by identified custodians at the Department of Homeland Security ("DHS") and relevant constituents (documents that may include communications involving White

---

[3] Defendants' objections to the first set of discovery requests in *Casa de Maryland* are due March 25, 2019, and Defendants are expecting to object to the requests to the extent they seek material from the White House.

House personnel)[.]"  *See id.* at 2.  As for proffering a 30(b)(6) White House deponent or responding to document requests propounded on the White House, Defendants emphasized the impropriety of such requests and "propose[d] that the parties meet and confer to discuss an appropriate mechanism for bringing this important matter to Judge Casper's attention."  *Id.* at 2-3. Defendants served their formal objections on October 18, 2018.  *See* ECF No. 76-5.

The parties were unable to resolve their differences in a meet-and-confer, and Plaintiffs have now moved to compel discovery on their original requests.  Yet, since those requests, Defendants produced from DHS's files the vast majority of the approximately 9,500 documents (totaling more than 75,000 pages) produced to date, with limited or no redactions files.[4]  As Plaintiffs acknowledge, these include communications between White House and DHS's officials. *See* Pls.' Mem. at 12 (providing a sampling of documents in their possession of White House communications).

The discovery requests at issue, including the 30(b)(6) deposition notice, are enumerated in Plaintiffs' motion to compel.  *See* Pls.' Mem. at 3-4 (quoting document requests at issue); Notice of 30(b)(6) Deposition to Defendant Donald J. Trump's Office of Policy (ECF No. 76-2).

## **STANDARD OF REVIEW**

The Court has broad authority to control the nature and timing of discovery, and "should not hesitate to exercise appropriate control over the discovery process."  *Herbert v. Lando*, 441 U.S. 153, 177 (1979).  Rule 26(b) of the Federal Rules of Civil Procedure directs a district court to limit the scope of discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]"  Fed. R. Civ. P. 26(b)(2)(C)(i).  Although there is often a presumption in favor of

---

[4] Defendants have also logged thousands of additional documents as privileged.

disclosure of non-privileged material, "[i]n some circumstances, . . . the requesting party should be required to assume a heavy burden of persuasion before any discovery is allowed." *See Cheney*, 542 U.S. at 392 (Stevens, concurring).

## ARGUMENT

I. **Plaintiffs' Invitation for this Court to Resolve Questions of Privilege in Determining the Appropriateness of White House Discovery is in Direct Contravention of Supreme Court Precedent.**

Plaintiffs' entire motion is incorrectly premised on whether certain privileges should attach to White House documents in this case. *See* Pls.' Mem. at 8-19.  In making this argument, Plaintiffs make the extraordinary assertion that the Presidential Communications Privilege and the Deliberative Process Privilege should not apply to unidentified documents given their purported need for these documents. *See id.* at 9-11, 18-19.  That analysis has it completely backwards. *See Cheney*, 542 U.S. at 385 (declaring that "[a] party's need for information is only one facet of the problem" when "discovery requests are directed to the Vice President and other senior Government officials" and the "Executive Branch, at its highest level, is seeking the aid of the courts to protect its constitutional prerogatives.").  Rather, the first question presented under *Cheney* is whether the White House should be required to search for and review documents in the first place or rather other avenues exist for addressing any legitimate need. *Id.* at 391 (holding that the D.C. Circuit "relying on its mistaken reading of *United States v. Nixon,* prematurely terminated its inquiry after the Government refused to assert privilege and did so without even reaching the weighty separation-of-powers objections raised in the case'").

Plaintiffs' discovery requests are extraordinary.  They are directed to the sitting President of the United States and his top White House advisors in a civil suit challenging a decision by the

Secretary of Homeland Security.[5]  The intrusions and burdens of civil discovery, if imposed on the White House, would disrupt the functioning of the Executive Branch and raise substantial separation-of-powers concerns.  Litigants must therefore exhaust other sources of non-privileged discovery before courts may put the Executive to the burden of either responding to interrogatories, request for productions, and other discovery requests, or formally asserting executive privilege.  *See Cheney*, 542 U.S. at 383, 388.  Plaintiffs have not come close to meeting their burden here.

Unlike other Government officials, the President maintains unique "constitutional responsibilities and status . . . ."  *Nixon v. Fitzgerald*, 457 U.S. 731, 753 (1982).  The President is "the chief constitutional officer of the Executive Branch," and is "entrusted with supervisory and policy responsibilities of utmost discretion and sensitivity."  *Id.* at 750.  What is more, the President's "communications and activities encompass a vastly wider range of sensitive material than would be true of any 'ordinary individual.'"  *Cheney*, 542 U.S. at 381 (quoting *United States v. Nixon,* 418 U.S. 683, 715 (1974)).  Thus, "special considerations control when the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated."  *Am. Historical Ass'n v. NARA*, 402 F. Supp. 2d 171, 182 (D.D.C. 2005) (quoting *Cheney*, 542 U.S. at 385).  Indeed, the Supreme Court "has held, on more than one occasion, that '[t]he high respect that is owed to the office of the Chief Executive . . . is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery[.]'"  *Cheney*, 542 U.S. at 385 (quoting *Clinton v. Jones*, 520 U.S. 681, 707 (1997));

---

[5] For the reasons stated in Defendants' motion to dismiss, Defendants continue to believe that the President is not a proper defendant in this action.  *See Mississippi v. Johnson*, 71 U.S. (4 Wall) 475, 501 (1866); *Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992) (plurality opinion); *id.* at 827 (Scalia, J., concurring in part and concurring in the judgment) ("apparently unbroken historical tradition supports the view" that courts may not order the President to "perform particular executive . . . acts").

*see also Fitzgerald*, 457 U.S. at 753 ("Courts traditionally have recognized the President's constitutional responsibilities and status as factors counseling judicial deference and restraint.").

Discovery directed to the White House triggers weighty separation-of-powers concerns. *Cheney*, 542 U.S. at 383. District "courts must narrow overly broad and intrusive discovery requests directed at the highest levels of the Executive Branch, lest 'vexatious litigation . . . distract [the Executive Branch] from the energetic performance of its constitutional duties.'" *Batalla Vidal v. Duke*, No. 16-CV-4756, 2017 WL 8773110, at *4 (E.D.N.Y. Oct. 17, 2017) (Garaufis, J.) (alterations in original) (citing *Cheney*, 542 U.S. at 382) (finding that a magistrate's order "requiring the White House to identify and assert privilege with respect to specific documents or risk waiving privilege over those documents [] potentially raises constitutional concerns akin to those at issue in *Cheney*"); *cf. In re Kirstjen M. Nielsen, Secretary of Homeland Security*, 17-3345, Dkt. No. 171 (2d. Cir. Dec. 27, 2017). (explaining that a discovery order covering White House documents would "creat[e] possible separation of powers issues").

In *Cheney*, the Supreme Court followed a long line of authority dating back to *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803), protecting the confidentiality of presidential communications, *see generally In re Sealed Case*, 121 F.3d 729, 738-40 (D.C. Cir. 1997) (reviewing history of presidential communications privilege), and emphasizing the requirement for a "focused demonstration of need," *id.* at 746. *Cheney* held that it is impermissible for a civil litigant to propound broad-based and wide-ranging discovery requests and then require "the Executive Branch to bear the onus of critiquing the unacceptable discovery requests line by line." 542 U.S. at 388. Rather than put the White House to the substantial and constitutionally intrusive burden of searching for responsive documents and invoking privilege with regard to each document to which a privilege might apply, under *Cheney* the district court must hold the plaintiff

to a heightened standard of relevance and need.  As the Supreme Court explained, "precedents provide no support for the . . . requirement that the Executive Branch bear the burden of invoking executive privilege with sufficient specificity and of making particularized objections.  Indeed, those precedents suggest just the opposite."  *Id.* at 371.[6]

*Cheney* thus compels district courts to either preclude or, at a bare minimum, sharply condition and curtail discovery requests directed to the White House.  Such requests must be allowed only when plaintiffs can show that the discovery sought is necessary to their case by first exhausting alternative sources of non-privileged discovery.  Plaintiffs must demonstrate that the requests are limited to essential information that cannot otherwise be obtained.  *See Lardner v. Dep't of Justice*, No. 03-0180, 2005 WL758267, at *9 (D.D.C. Mar. 31, 2005) (citing *Cheney* for the proposition that "a court must screen a request for presidential documents to ensure that the discovery is essential to the proceedings").

---

[6] Plaintiffs' threshold obligations in cases such as this one, in which Plaintiffs seek civil discovery from the Executive Branch at its highest level, are greater than the obligations imposed on the special prosecutor in *Nixon*.  As the *Cheney* Court observed, "[t]he need for information for use in civil cases, while far from negligible, does not share the urgency or significance of the criminal subpoena requests in *Nixon*."  542 U.S. at 384.  Because it is a "primary constitutional duty of the Judicial Branch . . . to do justice in criminal prosecutions[,]" the withholding of information "from a tribunal in an ongoing criminal case when the information is necessary to the court in carrying out its tasks 'conflicts with the function of the courts under Art[icle] III.'"  *Id.* (citations omitted). "Such an impairment of the 'essential functions of another branch,' . . . is impermissible."  *Id.* (citation omitted).  In contrast, the withholding of information in a civil case "does not hamper another branch's ability to perform its 'essential functions' in quite the same way."  *Id.*

**II.      Plaintiffs Have Available Alternative Avenues of Exploration That Must Be Pursued In Lieu Of Imposing the Burden and Separation of Powers Concerns Contemplated by Discovery on the White House.**

In light of the Supreme Court's instruction in *Cheney*, Plaintiffs' requests directed to the White House are inappropriate for at least three reasons.   First, Plaintiffs' requests are impermissibly and unjustifiably intrusive, as they pertain to presidential communications. Plaintiffs wish to learn who may have spoken with the President or his advisors about TPS, when they did so, what they said, and what documents they passed along.   In other words, Plaintiffs' requests, on their face, plainly seek constitutionally protected presidential communications.   If permitted to proceed, such onerous discovery would inevitably set the Executive and Judicial Branches "on a collision course" through adjudications of executive privilege, thrusting the court into "the awkward position of evaluating the Executive's claims of confidentiality and autonomy," and "difficult questions of separation of powers and checks and balances" are pushed to the fore. *Cheney*, 542 U.S. at 389.   When an agency or current or former government official possesses documents or information reflecting White House communications, courts are thrust into "the awkward position of evaluating the Executive's claims of confidentiality and autonomy," and "difficult questions of separation of powers and checks and balances" are pushed to the fore. *Cheney*, 542 U.S. at 389.   *Cheney*'s admonition that there is "no support for the proposition that the Executive Branch 'shall bear the burden' of invoking executive privilege" before absolutely necessary, *id.* at 388 (citation omitted), undoubtedly applies to materials Plaintiffs that seek here.

Second, the requested discovery would be unduly burdensome, and would distract White House officials, who bear significant responsibility for the day-to-day operations of government, from their essential mission.   The burden imposed on the White House by discovery orders is an "important factor" to be considered by courts, due to the special deference and "the high respect

that is owed to the office of the Chief Executive[.]" *Cheney*, 542 U.S. at 385 (citation omitted). Structuring and conducting a search would be burdensome enough, but the burden is amplified where, as here, responsive materials would likely fall within the ambit of one or more executive privileges, such as the presidential communications privilege. Even seemingly discrete tasks such as preparing and executing a declaration formally invoking executive privilege with specificity is an intrusive, burdensome, and time-consuming task that would detract from the many constitutional responsibilities of the President and his advisors.

Like in *Cheney*, Plaintiffs' requests improperly seek "everything under the sky." *See Cheney,* 542 U.S. at 387-88. For example, Plaintiffs seek a far-ranging 30(b)(6) deposition concerning all matters TPS. *See* Notice of 30(b)(6) Deposition to Defendant Donald J. Trump's Office of Policy (ECF No. 76-2) at 5 (listing nine topics covering, *inter alia*, the communications White House staff had concerning the challenged TPS designations). The very nature of a 30(b)(6) deposition imposes a heavy burden on any organization in the normal course, let alone an organization vested with significant constitutional responsibilities such as the White House. *See* Fed. R. Civ. P. 30(b)(6) (requiring the "named organization" to "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf" and the "matters on which each person designated will testify"). Such a deposition in this case is especially inappropriate because Plaintiffs seek such a deposition concerning internal White House considerations of a policy matter.

Further, contrary to Plaintiffs' characterizations, the document requests are not limited merely to a handful of documents considered at a meeting. Instead, Plaintiffs seek widespread discovery from the White House. For instance, Plaintiffs seek in Document Request Number 30, "[a]ny and all communications concerning the proposal to simultaneously terminate the TPS

designations for El Salvador, Haiti, Honduras, and Nicaragua discussed in the Principals Small Group Meeting on November 3, 2017." *See* Pls.' Mem. at 4.   To respond to such a request, Defendants would have to search all White House files concerning considerations about these TPS designations to assess whether the communications related to any proposal that was to be discussed at such a meeting.[7]   Similarly, Plaintiffs' far-ranging Request Number 27 seeks all internal White House communications former Chief of Staff John Kelly may have had about TPS.[8]   Finally, the disproportionate burden is further magnified by Plaintiffs essentially requesting that the White House search for all communications the White House had with DHS even though Defendants are already searching for those communications within DHS's files.   *See, e.g.*, *id.* at 3 (Requests Numbers 5, 13).

Finally, Plaintiffs have not shown that the enormous volume of discovery already available to them is inadequate for purposes of litigating their claims.   Plaintiffs claim they need this information to determine whether the White House has "exerted influence over DHS officials." *See id*. at 10.   But the Government has already produced from DHS's files approximately 9,500 documents, containing more than 75,000 pages, that have limited or no redactions.[9]   As Plaintiffs themselves recognize, these documents include communications or the memorialization of

---

[7] Request number 31 similarly seeks "communications" relating to any such proposal. *See* Pls.' Mem. at 4. Request number 24 likewise seeks a broad request of the White House's communications with Congress, which would require a broad search to identify any such documents.

[8] This request involving the White House Chief of Staff implicates core executive privileges. Similarly, request numbered 22 and 23 seek internal White House documents relating to purported statements by the President and would necessarily require review of whether those internal documents implicate privilege. *See* Pls.' Mem. at 3-4.

[9] As discussed above, Defendants have also logged thousands of additional documents as privileged.

communications between White House and DHS officials.  *See id*. at 12 (listing several examples of such communications in their possession).   Presumably, if there was any improper influence on DHS, the best source of that evidence would be in DHS's files.  Moreover, discovery is ongoing, and the Government will continue to produce responsive, non-privileged documents held by agency custodians.  In fact, these custodians whose files have been searched at DHS include the Secretary of Homeland Security, a former Secretary of Homeland Security (John Kelly), and a former Acting Secretary of Homeland Security, as well as other senior DHS officials.

The district court in *Ramos*, found that the record was sufficient, without requiring discovery on the White House, to resolve the plaintiffs' motion for preliminary injunction. Similarly, the district court in *Saget* conducted an entire trial concerning the TPS termination for Haiti without ordering discovery on the White House, notwithstanding the plaintiffs in that case seeking such discovery.  Accordingly, despite the instant case being akin to *Ramos* and *Saget*, Plaintiffs cannot show why they need to impose highly intrusive burdens on the White House and the President, and raise separation of powers concerns, when they will have more than an adequate record from discovery on the Department of Homeland Security to litigate this case.

Other courts in similar contexts have limited discovery of White House communications to documents contained in the files of cabinet agencies, notwithstanding allegations that the White House improperly influenced those decisions.  In *Batalla Vidal* concerning a challenge to the revocation of Deferred Action for Childhood Arrivals ("DACA"), the district judge limited a magistrate judge's order so that the Government was required to "compile a privilege log only with respect to DHS and [Department of Justice] documents" rather than documents held by White House custodians.  *See* 2017 WL 8773110 at *4; *see also id.* ("By requiring the White House to identify and assert privilege with respect to specific documents or risk waiving privilege over those

documents . . . the Order potentially raises constitutional concerns akin to those at issue in *Cheney*."); *cf. In re Kirstjen M. Nielsen, Secretary of Homeland Security*, 17-3345, Dkt. No. 171 (2d. Cir. Dec. 27, 2017). Here, Defendants are already doing as much and discovery should be limited in such a fashion.

Because of the serious privileges implicated in any request on the White House, and the associated separation of powers concerns, it is even more critical that a plaintiff and a court first explore all other avenues before imposing such burdens. Indeed, the Supreme Court in *Cheney* reversed the D.C. Circuit's requirement that the documents must be reviewed and logged. *See id*. at 390 (finding that "there is sound precedent in the District of Columbia itself for district courts to explore other avenues, short of forcing the Executive to invoke privilege, when they are asked to enforce against the Executive Branch unnecessarily broad subpoenas"). Similarly here, it is premature for this Court to examine these questions of privilege. Rather, the sole matter to be addressed in resolving Plaintiffs' motion is the antecedent question of whether the discovery contemplated on the White House is proper, especially in light of the alternative avenue available to Plaintiffs to seek discovery of White House communications with DHS officials that are contained in DHS's files. At the very least, it would be improper for this Court to make a categorical ruling on privilege when Defendants have not even had an opportunity to assert the privilege for the particular documents Plaintiffs now seek. *See, e.g.*, *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 71 (1st Cir. 2011) ("Determining whether documents are privileged demands a highly fact-specific analysis—one that most often requires the party seeking to validate a claim of privilege to do so document by document.").

### III.    This Court Should Stay Any Order Authorizing Discovery on the White House to Allow Defendants to Consider their Appellate Options.

To the extent that this Court agrees with Plaintiffs, even in part, and orders discovery on

the White House, this Court should not order the seemingly impossible task of requiring the White House to produce or log all documents within 14 days, as requested by Plaintiffs.  Rather, Defendants respectfully request that this Court stay its order for 30 days to give Defendants sufficient time to explore its appellate options.

And, should Defendants seek further review, Defendants respectfully ask that this Court continue its stay of its order pending completion of such appellate proceedings.  Earlier this year the Ninth Circuit likewise stayed a district court discovery order in *Karnoski v. Trump*, No. C17-1297-MJP (W.D. Wash.), pending the Ninth Circuit's consideration of the Government's petition for a writ of mandamus concerning White House discovery.  *See In re Donald J. Trump*, No. 18-72159 (9th Cir. Sept. 17, 2018), Dkt. No. 36.  Here, in the absence of any legal justification for Plaintiffs' demands, the Court should protect the White House from responding to such discovery until Defendants can fully avail itself of their appellate options.

The pursuit of such appellate options is in fact expressly contemplated by *Cheney*.  The Supreme Court found that mandamus was proper given that the "facts and allegations remove this case from the category of ordinary discovery orders where interlocutory appellate review is unavailable, through mandamus or otherwise."  *See Cheney*, 542 U.S. at 381-382.  Given that there is no impending deadline at issue in this litigation—all the terminations at issue are either enjoined or stayed—it is even more prudent to stay any order permitting discovery on the White House.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Plaintiffs' motion to compel.


Dated: March 22, 2019                            Respectfully submitted,

                                                 JOSEPH H. HUNT
                                                 Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director

*/s/ Adam D. Kirschner*
ADAM D. KIRSCHNER
IL Bar No. 6286601
Senior Trial Counsel
United States Department of Justice
     Civil Division, Federal Programs Branch
1100 L Street NW, Room 11020
Washington, DC 20530
     Tel.:    (202) 353-9265
     Fax:    (202) 616-8460
E-mail:  adam.kirschner@usdoj.gov

Mailing Address:
Post Office Box 883
Washington, D.C. 20044

Courier Address:
1100 L Street NW, Room 11020
Washington, D.C. 20005

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the Court's CM/ECF system will be served

electronically on March 22, 2019, on the registered participants as identified on the NEF.

*/s/ Adam D. Kirschner*
ADAM D. KIRSCHNER

17